**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 2:12–cr–00478–JAD–VCF |
| vs. | **<u>ORDER</u>** |
| JOSHUA MICHAEL RILEY, *et al*., | |
| Defendants. | |

This matter involves the Government's prosecution of five Defendants for allegedly violating the Controlled Substances Act, 21 U.S.C. §§ 801–904 (2009). (*See* Third. Super. Indict. (#124) at 2–12[1]). In pertinent part, the Government alleges that Defendants possessed and intended to distribute four "fake pot" substances, alpha-PVP, AM2201, UR-144, and XLR-11, which are allegedly controlled substances analogues under the Federal Analogue Act, 21 U.S.C. § 813 (1988); (Gov't's Opp'n (#168-1) at 19). Before the court are Defendants' motion for a *Daubert* hearing (#144) and motion for a *Franks* hearing (#145). Oppositions and replies have been filed.[2] For the reasons stated below, Defendants' motions are denied.

## DISCUSSION

The parties filings present two questions: (1) whether Defendants are entitled to a *Franks* hearing to challenge two U.S. Magistrate Judges' determinations that probable cause existed to issue two search warrants; and (2) whether the court should hold a *Daubert* hearing to determine whether the Government's expert opinion testimony is admissible at trial. Each question is addressed below.

---

[1] Parenthetical citations refer to the court's docket.
[2] (*See* Gov't's *Daubert* Opp'n #167); (Def.'s Reply #173); (Gov't's *Frank's* Opp'n #168); (Def.'s Reply #174).

1

**I.     Whether Defendants are Entitled to a *Franks* Hearing**

The first question presented by the parties' filing is whether Defendants are entitled to a *Franks* hearing to challenge two U.S. Magistrate Judges' determinations that probable cause existed to issue two search warrants. Defendants argue that a *Franks* hearing is appropriate for two reasons: (1) the Government's search warrants and affidavits were not supported by an affidavit from a trained chemist; and (2) the affidavits contained "material omissions" because they did not alert the U.S. Magistrate Judges that the relevant law allegedly went into effect on October 1, 2012, after the search warrants were issued and the searches conducted.[3] Before examining this question, the court begins its analysis by reviewing the Supreme Court's decision in *Franks v. Delaware*, 438 U.S 154 (1978).

**A.     *Overturning Probable Cause Findings under* Franks v. Delaware**

The Fourth Amendment protects "against unreasonable searches and seizures," and it provides that "[n]o warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. CONST. amend. IV. The text of the Fourth Amendment imposes three requirements on searches and seizures. *Id*.; *Dalia v. United States*, 441 U.S. 238, 255 (1978). First, the searches and seizures must be "reasonable." Second, if required, all warrants must be predicated "upon probable cause." *Id*. Third, if required, a search warrant must "particularly describe[s] the place to be searched, and the persons or things to be seized." *Id*.

The probable cause requirement is normally satisfied by an affidavit executed by an investigating officer. Probable cause exists if "a magistrate judge" concludes that "given all the circumstances set forth in the affidavit[,] . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U .S. 213, 238–39 (1983). Probable cause is a fluid concept.

---

[3] The search warrants were issued on July 20, 2012 by U.S. Magistrate Judge Hoffman, (*see* Warrant (#145-1) at 21), and July 24, 2012 by U.S. Magistrate Judge Foley (*see* Warrant #145-2) at 2). The searches were subsequently conducted on July 25, 2012. (*See, e.g*., Gov't's Opp'n (#165-1) at 6).

2

*Id*. It is the product of "a practical, common-sense" inquiry, which is not easily reduced to a set of legal rules. *Id*.

In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court established a two-prong test for overturning a magistrate judge's probable cause finding. First, the there is a "presumption of validity with respect to the affidavit supporting the search warrant." *Id*. at 171. Second, a defendant is entitled to an evidentiary hearing on the validity of the affidavit only if he can make a substantial showing that: (1) the affidavit contains intentionally or recklessly false statements or misleading omissions; and (2) the affidavit cannot support a finding of probable cause without the false information or with the misleading omissions. *Id*. at 155–56.

This means that a defendant must show that the affidavit could not support a finding of probable cause even if it was purged of its falsities and supplemented by the omissions. *See Stanert*, 762 F.2d at 782 (citing *Franks*, 438 U.S. at 171–72). A judge's probable cause determination is accorded "significant deference," *United States v. Gil*, 58 F.3d 1414, 1418 (9th Cir. 1995), and will be overturned only if it is "clearly erroneous." *United States v. Stanert*, 762 F.2d 775, 778 (9th Cir. 1985). In making the determination, the court is "limited to the information and circumstances contained within the four corners of the underlying affidavit." *Id*. The duty of a reviewing court is to ensure that the magistrate judge had a "substantial basis" for concluding that probable cause existed. *Gates*, 462 U.S. at 238 (internal quotations omitted).

### B. *Defendants' Motion for a* **Franks** *Hearing is Denied*

As a preliminary matter, the court notes that Defendants styled their motion as a motion to suppress. The court, however, construes the motion as a motion for a *Franks* hearing for three reasons. First, although the motion references the Fourth and Fifth Amendments, the gravamen of Defendants' motion is that the U.S. Magistrate Judges erred in concluding that there was probable cause to issue

3

search warrants because the warrants were allegedly defective. (*See* Def.'s *Franks* Mot. (#145) 11–17). This invokes *Franks v. Delaware*. Second, the Government has construed Defendants' motion as a motion for a *Franks* hearing. (*See* Gov't's Opp'n (#168) at 7:10). Third, Defendants' reply is predicated on the Supreme Court's decision in *Franks v. Delaware*. (*See* Def.'s Reply (#174) at 5).

Properly distinguishing between a motion to suppress and a motion for a *Franks* hearing is important because it effects the standard of review under 28 U.S.C. § 636(b)(1) and Local Rules IB 1–3 and IB 1–4. These provisions govern the jurisdiction and powers of U.S. Magistrate Judges. They provide that U.S. Magistrate Judges many only decide motions to suppress by issuing a "proposed findings of fact and recommendations" (*i.e.*, a Report & Recommendation). *See* 28 U.S.C. § 636(b)(1)(C); LR IB 1–4(h). Proposed findings of fact and recommendations are subject to a *de novo* standard of review. 28 U.S.C. § 636(b)(1)(C).

By contrast, 28 U.S.C. § 636(b)(1)(A) and Local Rule IB 1–3 state that U.S. Magistrate Judges may "hear and finally determine any pretrial matter not specifically enumerated as an exception in 28 U.S.C. § 636(b)(1)(A). Matters not exempted by 28 U.S.C. § 636(b)(1)(A) include a motion to determine whether or not the court should hold a hearing under *Franks v. Delaware*. *See* 28 U.S.C. § 636(b)(1)(A). Matters not exempted by 28 U.S.C. § 636(b)(1)(A) are subject to the "clearly erroneous or contrary to law" standard of review, which is a higher standard than the *de novo* standard. *See id.*[4]

---

[4] The court recognizes that these distinctions may lend themselves to confusion in the context of a motion for a *Franks* hearing. As discussed above, *Franks* hearings involve two steps. (*See supra* § I.A). First, the court must determine whether the defendant has made a "substantial preliminary showing" to warrant a hearing. (*Id.*) Second, if the defendant made a "substantial preliminary showing," then the court holds a hearing and decides whether probable cause existed to issue a warrant. (*Id.*) Because the first step is only a motion for a hearing, the court may dispose of the motion with an order. *See* 28 U.S.C. § 636(b)(1)(A) (not exempting motions for evidentiary hearings from the U.S. Magistrate Judge's jurisdiction). However, because the second step of the *Franks* inquiry involves the possibility of suppressing evidence that is the fruit of an unlawful search and seizure, the court can only dispose of the second step with a report and recommendation. *See id.*; LR IB 1-4(h) (requiring a report and recommendation for motions to suppress); *see also United States v. Thoms*, 684 F.3d 893, 897 (9th Cir. 2012)

With this proviso in mind, the court turns to the merits of the parties' filings. Defendants' motion for a *Franks* hearing is denied for two reasons. First, Defendants argument that Agent Garvin's affidavit was invalid because it was not supported by an affidavit from a trained chemist is incorrect. (*See* Reply (#174) at 7:7–8) ("Agent Garvin and Postal Inspector Carbonetti were not qualified to opine as to the chemical structures of the alleged analogues.")

As stated by Justice Frankfurter, "the issue in warrant proceedings is not guilt beyond reasonable doubt but probable cause for believing the occurrence of a crime." *United States v. Harris*, 403 U.S. 573, 584 (1971) (Frankfurter, J., concurring). Whether or not Agent Garvin and Postal Inspector Carbonetti were qualified to determine if the chemical structures of the substances in question were, in fact, substantially similar to controlled substances is irrelevant. Agent Garvin and Postal Inspector Carbonetti only needed to provide the U.S. Magistrate Judge with "probable cause" that the substances were substantially similar to controlled substances. As members of federal agencies tasked with enforcing the drug laws, Agent Garvin and Postal Inspector Carbonetti were qualified to make this assessment.

Because probable cause is a fluid concept and the product of "a practical, common-sense" inquiry, probable cause does not rest on a scientific foundation or need to withstand cross-examination. *See Gates*, 462 U.S. at 238–39. This means that the rules of evidence, which may bar statements in warrant affidavits from being admitted at trial, are not employed in warrant proceedings. *See Harris*, 403 U.S. at 584. Accordingly, the issue addressed in *Daubert*—(which is at the heart of Defendants' motion

---

(noting that a U.S. Magistrate Judge granted a motion for a *Franks* hearing by order and later issued a report and recommendation concerning the outcome of the hearing).

5

for a *Franks* hearing[5]—is inapplicable here. As stated by Professor Wigmore and reiterated by the Supreme Court:

> The inappropriateness of applying the rules of evidence as a criterion to determine probable cause is apparent in the case of an application for a warrant before a magistrate, the context in which the issue of probable cause most frequently arises. The ordinary rules of evidence are generally not applied in *ex parte* proceedings, 'partly because there is no opponent to invoke them, partly because the judge's determination is usually discretionary, partly because it is seldom final, but mainly because the system of Evidence rules was devised for the special control of trials by jury.'

*Brinegar v. United States*, 338 U.S. 160, 174 n. 12 (1949) (citing 1 WIGMORE, EVIDENCE 19 (3d ed., 1940); Note, *The "Probable Cause" Requirement for Search Warrants*, 46 HARV. L. REV. 1307, 1310–1311 (1933)). As a result, Defendants' argument fails as a matter of law.

Second, Defendants' argument regarding the effective date of the Synthetic Drug Abuse Prevention Act ("SDAPA"), Pub.L. No. 112–144, 126 Stat. 993 (July 9, 2012) is also incorrect as a matter of law. On July 9, 2012, President Obama signed the SDAPA into law. It is well established that congressional bills become law when the Executive signs the bill into law. *See* U.S. CONST. art. I, § 7, cl. 2 ("Every Bill which shall have passed the House of Representatives and the Senate, shall, before it become a Law, be presented to the President of the United States: If he approve he shall sign it . . ."); *Gozlon–Peretz v. United States*, 498 U.S. 395, 404 (1990) (citing *Arnold v. United States*, 9 Cranch 104, 119–20 (1815) ("[A]bsent a clear direction by Congress to the contrary, a law takes effect on the date of its enactment.").

---

[5] For example, Defendants state: "the government did not provide the issuing magistrate with a sufficient basis for the search warrants to issue. This is because the search warrants were premised simply on the Defendant's alleged possession of controlled substance analogues. It is a well-accepted principle that prosecutions involving controlled substance analogues consist of complex scientific expert analysis. As such, law enforcement should have, at a minimum, submitted an affidavit of a government chemist, or other qualified individuals, along with their affidavits in support of the search warrants." (Def.'s Reply (#174) at 7:22–8:8).

Defendants argue that the SDAPA was not effective until October 1 or 12, 2012, when the "slip law" was published as Public Law No. No. 112–144. (Def.'s Reply (#179) at 3 n. 1). As a result, Defendants conclude that the search warrants, which were issued on July 20 and 24, 2012, and the subsequent July 25, 2012 search, were invalid or unconstitutional. (*Id*. at 2–3). In support of this argument, Defendants rely on the existence of "public disagreement" regarding the SDAPA's effective date (*see, e.g.*, *id*. at 3 n. 1), and statements by a former U.S. Attorney that was posted on the Ohio State Journal of Criminal Law's website, which erroneously indicated that the law's effective date was October 1, 2012. (*See* Mot. to Dismiss (#148) at 14:1).

These arguments fail as a matter of law. The Constitution and Supreme Court, not former U.S. Attorneys, determine when bills become effective. *See* U.S. CONST. art. I, § 7, cl. 2. Additionally, at least one other district court has already rejected this same argument. *See United States v. Carlson*, No. 12–cr–305–DSD–LIB, 2013 WL 5125434, at *21 (D. Minn. Sept. 12, 2013). As a result, the court concludes that the SDAPA was effective July 9, 2012.

Because both of the Defendants' arguments fail as a matter of law, Defendants have not made a "substantial showing" that (1) the affidavit contains intentionally or recklessly false statements or misleading omissions and (2) the affidavit cannot support a finding of probable cause without the false information or with the misleading omissions. *Franks*, 438 U.S. at 155–56. Defendants' motion for a *Franks* hearing, therefore, is denied.

## II. **Whether a Pretrial *Daubert* Hearing is Appropriate**

The second question the parties' filings raise is whether the court should hold a *Daubert* hearing to determine whether the Government's expert opinion testimony is admissible. The court concludes that holding a hearing would be premature. Before discussing the issue, the court begins its analysis by

7

reviewing the Supreme Court's decision in *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579, 592–94 (1993).

### A. *Pretrial Evidentiary Hearings under* **Daubert**

Federal Rule of Evidence 702 governs expert opinion testimony. In pertinent part, Rule 702 requires the court to act as a "gatekeeper" and determine whether expert testimony is "reliable" and, therefore, admissible. *See* FED. R. EVID. 702. In recent years, the Supreme Court has provided lower courts with considerable guidance for determining whether an expert opinion is "reliable." *See* FED. R. EVID. 702, Advisory Committee Notes, 2000 Amendments (listing several "reliability" factors in addition to the *Daubert* factors); *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579, 592–94 (1993) (identifying the four *Daubert* factors); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

As a result of these decisions, "*Daubert* has become ubiquitous in federal trial courts." *United States v. Alatorre*, 222 F.3d 1098, 1100 (9th Cir. 2000). Although *Daubert*, *Joiner*, and *Kumho Tire* signaled a dramatic departure from *Frye's* "general acceptance" standard, which changed **how** courts discharge their gatekeeping duties, the cases did not affect the trial court's discretion regarding **when** it should discharge its gatekeeping duties under Rule 702. *See Kumho Tire Co.*, 526 U.S. at 152. As a result, trial courts are not required to hold "a pretrial hearing in order to discharge its gatekeeping function." *Alatorre*, 222 F.3d at 1100–03. The decision of whether and when to hold a pretrial hearing is reviewed for abuse of discretion. *Id*.

### B. *Defendants' Motion for a* **Daubert** *Hearing is Denied*

Defendants' motion for a *Daubert* hearing is denied. In support of their motion, Defendants primarily rely on a district court order from the Eastern District of Wisconsin, which noted in dicta that "the overwhelming weight of opinion in the scientific community is that the chemical structures of UR–

144 and XLR–11 are not substantially similar to the chemical structure of JWH–018." (*See* Def.'s Reply (#173) at 6:16–22) (citing *The Smoke Shop, LLC v. U.S.*, 949 F. Supp. 2d 877 (E.D. Wis. 2013)). Defendants' reliance on *The Smoke Shop* is unpersuasive for four reasons.

First, Defendants' reliance on *The Smoke Shop* is misplaced. In the context of *Daubert*, the focus is on the "principles and methodology" applied, not the conclusions they generate. FED. R. EVID. 702, Advisory Committee Notes, 2000 Amendments (citing *Daubert*, 509 U.S. at 595). Defendants, however, cite *The Smoke Shop* for a scientific conclusion. (*See* Def.'s Reply (#173) at 6:16–22). This is mistaken. Neither Rule 702 nor *Daubert* and its progeny stand for the conclusion that expert testimony should be discredited because of the expert's conclusions. *See* FED. R. EVID. 702; *Daubert*, 509 U.S. at 592–94; *Joiner*, 522 U.S. at 136; *Kumho Tire Co.*, 526 U.S. at 137.

Second, Defendants have not presented persuasive reasons to question the "principles and methodology" of the Government's proposed experts. As the Advisory Committee Notes to Rule 702, "the trial court may fairly suspect that [an expert's] principles and methods have not been faithfully applied" if "an expert purports to apply principles and methods in accordance with professional standards, and yet reaches a conclusion that other experts in the field would not reach." FED. R. EVID. 702, Advisory Committee Notes, 2000 Amendments (citing *Lust v. Merrell Dow Pharm., Inc.*, 89 F. 3d 594, 598 (9th Cir. 1996).

Defendants cite *The Smoke Shop* for the proposition that the Government's experts "are inherently unreliable" because the Government's experts reached a conclusion that is different from the conclusion noted in *The Smoke Shop*. (Def.'s Reply (#173) at 7:5–6). This is unpersuasive. Rule 702's Advisory Committee Notes state that an expert's conclusion "may" be indicative of unreliability if other experts "would not reach" the same conclusion. This does not mean, as Defendants argue, that an

expert's conclusion must be indicative of unreliability when different experts reach different conclusions. (*See id.*)

Additionally, the court is reluctant to credit *The Smoke Shop's* scientific conclusion because it did not cite any journal articles or provide any reasoning for its conclusion that "the overwhelming weight of opinion in the scientific community is that the chemical structures of UR–144 and XLR–11 are not substantially similar to the chemical structure of JWH–018." *See The Smoke Shop, LLC*, 949 F. Supp. 2d at 877. On the contrary, the court's review of relevant case law indicates that *The Smoke Shop's* conclusion regarding UR–144, XLR–11, and JWH–018 is not definitive. In *United States v. Fredida*, the Honorable Roy B. Dalton, Jr., U.S. District Court Judge, engaged in an extensive scientific examination of the same substances and concluded that they are "substantially similar" for purposes of the Federal Analogue Act, 21 U.S.C. § 813. *See Fredida*, 942 F. Supp. 2d, 1270, 1277–79 (M.D. Fla. 2013). Given Judge Dalton's extensive analysis of the substances in question, the court is persuaded to follow *Fredida*, not *The Smoke Shop*.

Third, because Defendants' motion challenges the conclusions of the Government's experts, the issue that Defendants raise is appropriate for cross examination at trial. *See United States v. Chischilly*, 30 F.3d 1144, 1154 (9th Cir. 1994) (citing *Daubert*, 509 U.S. at 596) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.")).

Fourth, without a stronger showing of unreliability from Defendants, the court's prudential concerns militate against holding a *Daubert* hearing at this time. A court's rulings in a pre-trial *Daubert* hearing are generally not binding. *See Fredida*, F. Supp. 2d at 1283; *see also City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) ("As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or

modify an interlocutory order for cause seen by it to be sufficient."). The reason for this is procedural. Parties are not expected "to [have] adduce[d] a proper foundation" for the admissibility of evidence at trial during the early stages of litigation. *See Fredida*, F. Supp. 2d at 1283.

Statements in Defendants' motion demonstrate that this procedural issue exists now. (*See* Pl.'s Daubert Mot. (#144) at 5:16) ("[T]he government **recently** filed its notice of intent to present expert testimony . . .") (emphasis added). Consequently, in the interest of speed and reducing litigation costs, the court reserves ruling on the merits of Defendants' *Daubert* dispute until Defendants make a stronger showing of unreliability, file a motion *in limine*, or object at trial. *See, e.g.*, *Voilas v. Gen. Motors Corp.*, 73 F. Supp. 2d 452 (D. N.J. 1999) (stating that issues addressed during a *Daubert* hearing are proper for reconsideration in the form of a motion *in limine* if "new information [is brought] to light"); *see also Kumho Tire Co.*, 526 U.S. at 153 (citing FED. R. EVID. 102) ("Indeed, the Rules seek to avoid 'unjustifiable expense and delay' as part of their search for 'truth' and the 'jus[t] determin[ation]' of proceedings.").

ACCORDINGLY, and for good cause shown,

IT IS ORDERED that Defendants' motion for a *Franks* hearing (#145) is DENIED.

IT IS FURTHER ORDERED that Defendants' motion for a *Daubert* hearing (#144) is DENIED WITHOUT PREJUDICE.

IT IS SO ORDERED.

DATED this 7th day of February, 2014.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE